UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMBER SORRELL, BETH LAKE, and PATRICIA VANHOVEN, individually and on behalf of all other persons similarly situated who were employed by BETHANY OPERATING CO. LLC, and/or any other entities affiliated with or controlled by BETHANY OPERATING CO. LLC, <br><br> Plaintiffs, <br><br> -against- <br><br> BETHANY OPERATING CO. LLC and any related entities, <br><br> Defendant. | **FLSA COLLECTIVE ACTION** <br><br> **and** <br><br> **CLASS ACTION** <br><br> Docket No.: 5:25-cv-1430 (AJB/TWD) <br><br> **JURY TRIAL DEMANDED** |

Named Plaintiffs Amber Sorrell, Beth Lake, and Patricia VanHoven (collectively "Named Plaintiffs"), by their attorneys Gattuso & Ciotoli, PLLC; allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1.  This action is brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 206, 207, and 216(b); New York Labor Law § 190 *et seq.*, New York Labor Law §§ 650 *et seq.* and 663; 12 New York Codes, Rules and Regulations (hereinafter referred to as "NYCRR") §§ 142 *et. seq.* to recover unpaid wages and overtime compensation as well as related damages owed to the Named Plaintiffs and all similar situated persons (collectively "Plaintiffs") who are formerly employed by Defendant Bethany Operating Co. LLC ("Bethany"), or any other staffing agencies providing similarly situated persons to Defendant Bethany, and/or any other entities affiliated with or controlled by Bethany (hereinafter "Defendants") in trades and occupations entitled to receive overtime compensation.

1

2. From at least October 2019 and continuing through the present, Defendant has engaged in a policy and practice of depriving its employees of the applicable straight time wages and overtime wages for work they performed as mandated by federal and state law.

3. From at least October 2019 and continuing through the present, Defendant has engaged in a policy and practice of having its employees regularly work in excess of 40 hours per week without providing overtime compensation as required by the applicable federal and state laws.

4. Upon information and belief, Defendant also failed to provide appropriate wage notices and pay statements to Named Plaintiffs and those similarly situated as required under NYLL.

5. Named Plaintiffs have initiated this action seeking for themselves, and on behalf of all similarly situated employees, all compensation, including straight time wages and overtime compensation of which they were deprived, plus interest, damages, and attorneys' fees and costs.

## JURISDICTION

6. Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under New York Labor Law.

7. The statute of limitations under FLSA, 29 U.S.C. § 255(a), for willful violations is three (3) years.

8. The statute of limitations under New York Labor Law § 198(3) is six (6) years.

**VENUE**

9. Venue for this action in the Northern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of New York.

**THE PARTIES**

10. Named Plaintiff Amber Sorrell is an individual who is currently a resident of Oneida County, New York, and was employed joint by Defendant Bethany as a Certified Nursing Assistant (CNA) from 2007 to approximately February 2023.

11. Named Plaintiff Beth Lake is an individual who is currently a resident of Jefferson County, New York, and was employed by Defendant Bethany as a Registered Nurse (RN) from January 3, 2023, through June 16, 2025.

12. Named Plaintiff Patricia VanHoven is an individual who is currently a resident of Oneida County, New York, and was employed joint by Defendant Bethany as a Licensed Practical Nurse (LPN), the last time being from 2022 - 2024.

13. Upon information and belief, Defendant Bethany Operating Co. LLC, is a domestic limited liability company organized and existing under the laws of the State of New York and authorized to do business within the State of New York, with a principal place of business at 800 West Chestnut Street Rome, NY 13440.

14. Defendant Bethany operates a nursing home and rehabilitation center called Bethany Gardens, located at 800 West Chestnut Street Rome, NY 13440, where it employed the Named Plaintiffs and putative class members.

15. At all times relevant to this action, Defendant Bethany was Named Plaintiffs' employer as defined by NYLL §§ 2(6), 190(3), and 651(6), as well as 29 U.S.C. § 203, *et seq.*

## **CLASS ALLEGATIONS**

16. Named Plaintiffs reallege and incorporate by reference all the allegations set forth above.

17. This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

18. This action is brought on behalf of Named Plaintiffs and a class consisting of similarly situated employees who worked for Defendants as Registered Nurses, Certified Nurse Assistants, Licensed Practical Nurses, and other employees paid hourly wages while performing similar direct nursing and personal care support in furtherance of Defendant Bethany's operations as a nursing home and medical facility, and who had meal breaks automatically deducted from their wages while working at Defendant Bethany.

19. Named Plaintiffs and potential Plaintiffs who elect to opt-in as part of the collective action are all victims of Defendants common policy and/or plan to violate the FLSA and NYLL by failing to pay Named Plaintiffs and those similarly situated their regular hourly wage for all hours worked, and overtime hours at one and one-half times their regular hourly wages for all hours worked in excess of 40 in a week.

20. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be hundreds of employees. Additionally, the names of all potential members of the putative class are not known.

21. The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions of law and fact include but are not limited to: (1) whether Defendant failed to pay the appropriate regular wages for hours up to 40 in a week and overtime wages for all hours worked in excess of 40 in a week; (2) whether Defendant

failed to provide Named Plaintiffs with proper wage notices and wage statements during the time of their employment.

22. The claims of Named Plaintiffs are typical of the claims of the putative class members. Named Plaintiffs and putative class members were all subject to Defendants policies and willful practice of failing to pay regular and/or minimum wages and failure to pay overtime wages for all hours worked; as well as Defendants failure to provide wage notices as required by NYLL.

23. Named Plaintiffs and counsel will fairly and adequately protect the interests of the putative class. Named Plaintiffs has retained counsel experienced in complex wage and hour collective and class-action litigation.

24. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Named Plaintiffs and putative class action members lack the financial resources to adequately prosecute separate lawsuits against Defendants. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendants policies.

## FACTS

25. Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

26. This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

### Named Plaintiff Amber Sorrell

27. Named Plaintiff Amber Sorrell was employed directly by Defendant Bethany from 2007 to approximately February 2023 as a Certified Nursing Assistant (CNA).

28. Named Plaintiff Sorrell was paid varying rates of pay throughout her time working for Defendant. Her last hourly rate was approximately $19.00 per hour.

29. Named Plaintiff Sorrell typically worked Mondays through Fridays from 6:00am to 2:00pm and worked shifts every other weekend.

30. Named Plaintiff Sorrell typically worked overtime hours.

31. On average, Named Plaintiff Sorrell worked 50 – 60 hours per week.

32. Named Plaintiff Sorrell is not in possession of her pay statements from Defendant Bethany.

33. Named Plaintiff Sorrell does not have access to her employment and pay records from Defendant Bethany since leaving her job there.

34. Named Plaintiff Sorrell will request her pay statements from Defendant Bethany with an authorization and through the discovery process of this litigation, and upon receipt of the same she will amend this complaint to provide details regarding her overtime hours.

35. Named Plaintiff Sorrell regularly worked through unpaid meal breaks because she was too busy attending to patients to take a full or partial 30-minite meal break.

36. When Named Plaintiff Sorrell worked through an unpaid meal break it was sometimes at the overtime rate of pay.

**Named Plaintiff Beth Lake**

37. Named Plaintiff Beth Lake was employed directly by Defendant Bethany from January 3, 2023, through June 16, 2025, as a Registered Nurse (RN).

38. Named Plaintiff Lake was paid varying rates of pay throughout her time working for Defendant. Her last hourly rate was $42.64.

39. Named Plaintiff Lake typically worked 16-hour long shifts during the weekends on both Saturdays and Sundays under a Baylor program.

40. Named Plaintiff Lake regularly worked through unpaid meal breaks because she was too busy attending to patients to take a full or partial 30-minite meal break.

**Named Plaintiff Patricia VanHoven**

41. Named Plaintiff Patricia VanHoven was employed directly by Defendant Bethany over numerous periods of time, the last being from 2022 to 2024, as a Licensed Practical Nurse (LPN).

42. Named Plaintiff VanHoven was paid varying rates of pay throughout her time working for Defendant.

43. Named Plaintiff VanHoven typically worked 16-hour long shifts during the weekends on both Saturdays and Sundays, and would work one weekday shift, that usually being the Thursday afternoon/evening shift from 3:00pm – 11:00pm.

44. Named Plaintiff VanHoven typically worked overtime hours.

45. On average, Named Plaintiff VanHoven worked 40 – 45 hours per week.

46. Named Plaintiff VanHoven is not in possession of her pay statements from Defendant Bethany.

47. Named Plaintiff VanHoven does not have access to her employment and pay records from Defendant Bethany since leaving her job.

48. Named Plaintiff VanHoven will request her pay statements from Defendant Bethany with an authorization and through the discovery process of this litigation, and upon receipt of the same she will amend this complaint to provide details regarding her overtime hours.

49. Named Plaintiff VanHoven regularly worked through unpaid meal breaks because she was too busy attending to patients to take a full or partial 30-minite meal break.

50. When Named Plaintiff VanHoven worked through an unpaid meal break it was sometimes at the overtime rate of pay.

**Defendant Bethany Garden's Operation**

51. This action is brought on behalf of Named Plaintiffs and a putative class collective consisting of similarly situated employees who worked for Defendant as hourly paid Registered Nurses, Certified Nurse Assistants and Licensed Practical Nurses, and other employees performing similar direct nursing and personal care support in furtherance of Defendant's operations.

52. Defendant Bethany operates at one primary facility on its premises at 800 West Chestnut Street Rome, NY 13440, referred to as Bethany Gardens, that is used for providing residential nursing homes and medical care services.

53. On any given day at Bethany Gardens, there are either 8 or 16 hour shifts being worked by Registered Nurses, Certified Nurses and Licensed Practical Nurses.

54. The Bethany Gardens facility has five (5) working floors with approximately 20 residents per floor at a given time.

55. On any given day at Defendant Bethany's facility, there are three (3) shift changes throughout the day, those being the morning shift (6:00am – 2:00pm), the afternoon/evening shift (2:00pm – 10:00pm), and the overnight shift (10:00pm – 6:00am).

56. Upon information and belief, during each weekday morning shift, Defendant Bethany would have approximately one (1) Registered Nurse (RNs), two to three (2-3) Certified Nurse Assistants (CNA), and one to three (1-3) Licensed Practical Nurses (LPN) working per floor at Bethany Gardens for the entire shift.

57. Upon information and belief, during each weekday afternoon/evening shift, Defendant Bethany would have approximately one (1) Registered Nurse (RNs), two to three (2-3) Certified Nurse Assistants (CNA), and one to three (1-3) Licensed Practical Nurses (LPN) working per floor at Bethany Gardens for the entire shift.

58. Upon information and belief, during each weekday overnight shift, Defendant Bethany would have approximately one (1) Registered Nurses, one (1) Certified Nurse Assistants (CNA), and one (1) Licensed Practical Nurses working per floor at Bethany Gardens for the entire shift.

59. Upon information and belief, during the weekend shifts, Defendant Bethany would have approximately one (1) Registered Nurse (RNs), one (1) Certified Nurse Assistants (CNA), and one to three (1-3) Licensed Practical Nurses (LPN) working on each floor of Bethany Gardens. Sometimes these staff numbers were even smaller.

60. Upon information and belief, the putative class spanning the entire statutory period of time is well into the 100s.

61. While working for Defendant, Named Plaintiffs and other similarly situated employees were regularly required to perform work for Defendant without receiving pay for all hours worked and overtime compensation when appropriate, as required by applicable federal and state law.

62. Throughout the entire duration of their employment with Defendant Bethany, Named Plaintiffs would clock in at the beginning of their shifts, and then clock out at the conclusion of it using Defendant's time-keeping system.

63. For every shift over six hours, one-half hour (30 minutes) would be automatically deducted from Named Plaintiffs' pay for a meal break.

64. When either of the Named Plaintiffs would work double shifts on Saturdays and Sundays (16-hour long shifts), two (2) one-half hour (30 minutes) would be automatically deducted from their pay for meal breaks, one for each 8-hour long period they worked.

65. Named Plaintiffs' and all similarly situated Registered Nurses, Certified Nurse Assistants and Licensed Practical Nurses who worked through their meal breaks were subject to Defendants' auto-deduction practice and did not get paid for the time they spent working through their breaks.

66. Named Plaintiffs, and those similarly situated, were all too busy working and caring for patients due to consistent staffing problems to take a full or even partial uninterrupted work-free meal break during their shifts that were over six hours long.

67. The degree to which Named Plaintiffs and those similarly situated were overworked and too busy to take a full 30-minute uninterrupted meal break, or any meal break at all, is well documented.

68. On multiple occasions, the Named Plaintiffs submitted written forms to Defendant's payroll department, located in a separate facility, that reported they had worked through meal breaks on a given workday, and requested that they be reimbursed for the time they worked that had been automatically deducted per Defendant's policy. The form Named Plaintiffs filled out was referred to as a "fiscal services department payroll inquiry/request form."

69. Defendant never responded to or fulfilled any of the Named Plaintiffs' requests to be reimbursed for meal break time they worked through that had automatically been deducted under Defendant's policy and practice.

70. On multiple occasions, the Named Plaintiffs complained to Defendant's administrators about being automatically deducted time for meal breaks despite working through

them and not being recouped pay by Defendant after reporting about working through automatically deducted breaks. Such complaints were specifically made to the Amber Hluska, Mark Smith, and Michele Thompson.

71. Every time a complaint or report was made to one of these administrative representatives of Defendant, their response would merely be "We'll take care of it" or "we'll look into it," without any resolution or corrective action every being taken.

72. Despite knowing all of this, Defendant would still automatically deduct the one-half hour of pay from the Named Plaintiffs' pay.

73. Defendant did not honor any procedures for reversing the automatic deduction or recouping pay for time worked in the event employees did not take a full uninterrupted work-free meal break.

74. Upon information and belief, this procedure and circumstances were the same for all members of the putative class.

75. Named Plaintiffs regularly observed many other similarly situated Registered Nurses, Certified Nurse Assistants and Licensed Practical Nurses regularly not receiving meal breaks.

76. On one or more occasions, Named Plaintiffs had complained with co-workers about Defendants meal break auto-deduction policy and practice and not being able to take meal breaks.

77. Named Plaintiff Lake, as an RN, personally received verbal complaints from CNAs and LPNs about working through meal breaks, not being paid for that time they worked, and Defendant not recouping them for that time when reported that they did not take breaks on given workdays.

78. Given her position, all Named Plaintiff Lake could do in these situations was encourage her colleagues to fill out the paper request and speak to the director of nursing.

79. Named Plaintiff Lake would sign pay reimbursement requests for employees who had not taken a lunch break and were auto-deducted 30 minutes.

80. However, it was known that Defendant Bethany would not honor or fulfill the pay reimbursement requests from employees for working through auto-deducted meal breaks. For example, Serria Dashnaw (LPN) directly advised Named Plaintiff Lake that staff would turn in pay requests to Defendant but would still never get paid.

81. Defendants consistently and repeatedly used this policy, procedure and method of automatically deducting one-half hour for meal breaks whether taken by the employee or not and at times failing to pay overtime across the members of the putative class.

82. Named Plaintiffs, and those similarly situated, did not receive wage notices.

83. Named Plaintiffs, and those similarly situated, received from Defendants inaccurate pay statements for each and every pay period that wrongfully deducted one or more one-half hour meal breaks that were not actually taken by Named Plaintiffs and those similarly situated. The pay statements were unreliable in that they incorrectly recorded all hours for which Named Plaintiffs and those similarly situated were owed pay and misled them as to whether they were properly paid for all hours worked. Each pay statement that wrongfully stated the hours due to Named Plaintiffs and those similarly situated constitutes a separate and individual actionable violation of the FLSA and NYLL, as stated herein.

## **FIRST CAUSE OF ACTION**

## **UNPAID WAGES AND OVERTIME UNDER FLSA**

84. The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

85. Named Plaintiffs and similarly situated hourly employees of Defendant bring this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, et seq.

86. Under the FLSA, Named Plaintiffs and similarly situated hourly employees are entitled to be compensated for all hours worked where such time is compensable time and is also subject to the regular time and overtime provisions of sections 206 and 207 of the FLSA.

87. Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiffs and similarly situated hourly employees for all time worked, including time which would have qualified as overtime.

88. Upon information and belief, Named Plaintiffs and those similarly situated hourly employees frequently worked more hours than what they were paid for and frequently had adjustments made to their time clock records resulting in a paycheck for less time than what the Named Plaintiffs and those similarly situated actually worked.

89. On this claim for relief, the Named Plaintiffs on behalf of themselves and other similarly situated hourly employees of Defendant seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid to the Named Plaintiffs and other similarly situated employees.

90. The Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

## SECOND CAUSE OF ACTION

## UNPAID REGULAR TIME AND OVERTIME UNDER NYLL

91. Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

92. Pursuant to Article Six of the New York Labor Law, workers, such as Named Plaintiffs and other members of the putative class action, are protected from wage underpayments and improper employment practices.

93. Pursuant to New York Labor Law § 190, the term "employee" means "any person employed for hire by an employer in any employment."

94. As persons employed for hire by Defendant, Named Plaintiffs and other members of the putative class action are "employees," as understood in Labor Law § 190.

95. Pursuant New York Labor Law § 190, the term "employer" includes "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

96. As an entity that hired the Named Plaintiffs and other members of the putative class, Defendant is an "employer."

97. Named Plaintiffs and other members of the putative class agreed upon wage rate and/or overtime compensation rate constitutes "wages" within the meaning of New York Labor Law §§ 190, 191.

98. Pursuant to New York Labor Law § 191 and the cases interpreting the same, workers such as Named Plaintiffs and other members of the putative class action are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

99. Pursuant to New York Labor Law § 652 and the cases interpreting same, "Every employer shall pay to each of its employees for each hour worked a wage of not less than" the statutory minimum wage.

100. In failing to pay Named Plaintiffs and other members of the putative class proper wages for time worked in one week, Defendant violated New York Labor Law § 191, by failing to pay Plaintiffs and other members of the putative class all of their wages earned within the week such wages were due, and violated Labor Law § 652, by failing to pay Plaintiffs minimum wages for all hours worked.

101. Pursuant to New York Labor Law § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and other members of the putative class, that is not otherwise authorized by law or by the employee.

102. By withholding wages for time worked in any given week from Plaintiffs and other members of the putative class, pursuant to New York Labor Law § 193 and the cases interpreting the same, Defendant made unlawful deductions in wages owed to Plaintiffs and other members of the putative class.

103. Pursuant to New York Labor Law § 198, Named Plaintiffs and those similarly situated bring this action to recover wages to which they are entitled.

104. Under NYLL, Named Plaintiffs and similarly situated hourly employees are entitled to a half hour break when their scheduled shift exceeds 6 hours.

105. Additionally, Named Plaintiffs and similarly situated employees are also entitled to be paid for all hours worked and at an overtime rate of one and one-half times the regular hourly rate when their total hours exceeded 40 hours per week.

106. Even though Named Plaintiffs and similarly situated employees are entitled a half-hour rest breaks, and to be paid for all hours worked including overtime rates for hours exceeding 40 per week, Defendant refused and continues to refuse to provide required breaks and failed and continues to fail to pay Named Plaintiffs and those similarly situated for all hours worked at the appropriate rate of pay, including overtime rates for work in excess of 40 hours per week, as required under to NYLL §§ 190, *et. seq.*, 650, *et. seq.*, and 19 NYCRR §§ 142, *et. seq.*

107. Upon information and belief, Defendant willfully, purposefully, and maliciously failed to pay the required compensation or provided the required rest periods as articulated in this claim for relief.

108. On this claim for relief, the Named Plaintiffs on behalf of themselves and other similarly situated hourly employees of Defendant seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiffs and other similarly situated employees.

109. The Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the NYLL.

### THIRD CAUSE OF ACTION

### FAILURE TO PROVIDE ANNUAL WAGE NOTICES AND PAY STATEMENTS UNDER NYLL

110. Plaintiffs repeats and re-alleges the allegations set forth above as if fully set forth herein.

111. Defendant has willfully failed to provide Named Plaintiffs and those similarly situated with wage notices, as required by NYLL § 195(1), in English or in the language identified

16

as their primary language, containing Plaintiffs rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names use by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus, such other information as the commissioner deems material and necessary.

112. Defendant has willfully failed to provide Named Plaintiffs and those similarly situated with proper and accurate pay statements, as required by NYLL § 195(3), listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; accurate recording of all hours due to be paid; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

113. Named Plaintiffs, and those similarly situated, did not receive all required wage notices and pay statements during their employment with Defendant.

114. Through their knowing or intentional failure to provide Named Plaintiffs with the wage notices and pay statements required by the NYLL, Defendant willfully violated NYLL §§ 191(1) and (3) and the supporting New York State Department of Labor Regulations.

115. According to NYLL § 198-1(b), Named Plaintiffs, and those similarly situated, are entitled to $50 for every day they did not receive a wage notice up to a total of $5,000, together with costs and reasonable attorney's fees.

116. According to NYLL § 198-1(b), Named Plaintiffs, and those similarly situated, are entitled to $250 for every week they did not receive a proper and accurate pay statement up to a total of $5,000, together with costs and reasonable attorney's fees.

117. By the foregoing reasons, Defendant violated NYLL §§ 195(1) and (3) and are liable to the Plaintiffs pursuant to NYLL 198-1(b) in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

## JURY TRIAL DEMANDED

118. Plaintiffs demands that all issues of fact be decided by a jury.

**WHEREFORE**, Named Plaintiffs, individually and on behalf of all other persons similarly situated who were employed by Defendant, demand judgment:

(1) On the First Cause of Action against Defendant, all unpaid wages and unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to the FLSA;

(2) On the Second Cause of Action against Defendant, all unpaid wages and unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law, and

(3) On the Third Cause of Action against Defendant, in an amount to be determined at trial, plus interest, attorneys' fees and costs; and

(4) Such other and further relief as this Court may deem just and proper.

Dated: Fayetteville, New York
October 14, 2025

By: <u>*/s/ Ryan G. Files*</u>
Ryan Files, Esq.
Frank Gattuso, Esq.
GATTUSO & CIOTOLI, PLLC
The White House
7030 E. Genesee Street
Fayetteville, New York 13066
315-314-8000
315-446-7521 (fax)
rfiles@gclawoffice.com
fgattuso@gclawoffice.com

*Attorneys for the Plaintiff and putative class*